UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ISM SPORTS, INC., d/b/a INNOVATIVE
SPORTS MARKETING, as Broadcast
Licensee of the September 20, 2001
Athens/Hibernian Program

                       Plaintiff,

           - v -

TED PROVTA, Individually, and as an
officer, director shareholder and/or principal
of OLYMPIAKOS FAN CLUB OF NY,
USA, INC d/b/a OMILOS FILATHLON
OLYMBIAKOS a/k/a OLYMPIAKOS FAN
CLUB OF NEW YORK, and
OLYMPIAKOS FAN CLUB OF NY, USA,
INC d/b/a OMILOS FILATHLON
OLYMBIAKOS a/k/a OLYMPIAKOS FAN
CLUB OF NEW YORK,
                     Defendants.
----------------------------------------------------------x

**REPORT AND RECOMMENDATION**

CV 04-918 (NG)(VVP)

**POHORELSKY, U.S. Magistrate Judge:**

       This matter was referred to me by the Honorable Nina Gershon for a report and recommendation regarding the amount of damages and attorney's fees to awarded to the plaintiff as against the two defaulting defendants, Ted Provta and Olympiakos Fan Club of NY, USA, Inc. (hereafter "Olympiakos").[1] This case involves the defendants' unauthorized interception, reception and publication of the plaintiff's closed-circuit telecast of the Athens/Hibernian pay-per-view soccer match (hereafter "the program") on September 20, 2001, without the prepayment of the required sublicense fee.

---

[1] Ted Provta is sued both individually and as an officer, director, shareholder and/or principal of Olympiakos.

### 1. Liability

The plaintiff seeks statutory damages as provided under 47 U.S.C. § 605 (e)(3)(3)(C). Given the default, the well-pleaded allegations of the Complaint against the defendants are deemed admitted, except as to the amount of the plaintiff's damages. *See, e.g.*, *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 113 S. Ct. 1049 (1993); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Thus, the court must accept as true the assertions that the defendants willfully intercepted and received the interstate communication of the program, which originated as a satellite signal and was thereafter transmitted via cable networks. *See* Second Amended Complaint ¶¶ 12, 15-16. The court is also required to accept as fact that after intercepting the program, the defendants published the event to its patrons without obtaining from the plaintiff the contractual right to do so and for the purpose of securing financial gain and commercial advantage. *Id.* ¶¶ 15, 29. Because the program originated as a satellite signal, *see* Second Amended Complaint ¶ 12, the signal was a radio transmission within the meaning of section 605. *Int'l Cablevision, Inc. v. Sykes*, 97 F. 2d 998, 1008 (2d Cir. 1993) (quoting 130 Cong. Rec. 31,874, *reprinted in* 1984 U.S.C.C.A.N. 4746). Therefore, these facts are sufficient to establish the defendants' liability for violating the statute.

### 2. Damages

The plaintiff seeks an award of statutory damages against the defendants under 47 U.S.C. § 605(e)(3)(C)(i)(II). The statute permits a plaintiff to elect between statutory damages and actual damages. Specifically, the applicable subsection permits a statutory damages award "as the court considers just," between a range of $1,000 to $100,000 for each unauthorized reception

and publication of a radio communication by the defendants in violation of 605. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II), (ii).  The plaintiff also seeks recovery of full costs, including reasonable attorneys' fees, which are mandated under 47 U.S.C. § 605(e)(3)(B)(iii).

The court received affidavits in lieu of holding an evidentiary hearing on these issues. *See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 11 (2d Cir. 1997) ("We have held that, under rule 55(b)(2), 'it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment."); *accord, Fustok v. ContiCommodity Serv., Inc.,* 873 F.2d 38, 40 (2d. Cir.1989); *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir.1993).  As no party has objected to that procedure, the court has considered affidavits submitted by the plaintiff, and concludes that they provide a basis for awarding the damages recommended below.

In setting the amount of statutory damages within the applicable range under section 605(e)(3)(C), the court first considers the revenue lost from the defendants' failure to make the necessary sublicense fee payment.  An affidavit submitted by the plaintiff's investigators states that there were approximately eight (8) patrons present in the defendants' establishment during the unlawful publication of the program. *See* Plaintiff's Affidavit of Doug Jacobs (hereinafter "Jacobs Aff.") ¶¶ 10-11, Ex. 1.  The court adopts a method of estimating plaintiff's damages used by other courts in this district in similar circumstances in which the number of patrons in the defendants' establishment during the event is multiplied by $50. *See, e.g., Entertainment By J & J, Inc. v. Mama Zee Restaurant 7 Catering Services, Inc.,* No. CV-01-3945, 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002) (citing *Time Warner Cable v. Taco Rapido Restaurant,* 988 F. Supp. 107, 111 (E.D.N.Y. 1997)).  Using that formula here yields a total of $400 (8

patrons times $50), which is below the statutory minimum damage award of $1,000 for the violation here.

In addition to lost revenue, the court considers whether damages should be enhanced to penalize the defendant. The plaintiff has provided adequate proof to establish that the defendants' conduct was undertaken willfully and for purposes of commercial advantage or private financial gain. *See* 47 U.S.C. § 605 (e)(3)(C)(ii); Second Amended Complaint ¶ 15, 29. The defendants clearly undertook active steps in order to obtain the transmission, because the transmission had to be decoded with electronic decoding equipment in order for the signal to be received and displayed. *See* Jacobs Aff. ¶¶ 6, 10-16. As discussed above, the purpose of displaying the program was to attract customers to the defendants' business establishment for commercial gain. *Id.* ¶¶ 14-17. Absent substantial financial penalties, the defendants will likely continue to illegally display the plaintiff's programming and other such establishments will follow suit. The plaintiff cannot practicably investigate all these infractions, nor should they be expected to do so.

The plaintiff has also suffered financial losses that are not easily quantified, including damage to reputation, loss of investment resources in the promotion of the event, loss of its ability to market future events and to control and receive fees for the reception of these events. *Id*. ¶¶ 7, 11-12. The latter is a significant loss, as it results in the erosion of the plaintiff's customer base, because the commercial establishments who rightly pay the sublicense fee find it difficult to compete with those who do not. *Id.* ¶¶ 13-16. Establishments authorized to carry the event are contractually obligated to pay a sublicense fee. *Id.* ¶ 10. On the other hand, establishments like that of the defendants can increase patronage by not charging, or

significantly reducing the charge, for potential customers. Conceivably, the plaintiff's legitimate, licensed subscribers would eventually prefer to expose themselves to the risks of illegally intercepting the programming rather than deal with the plaintiff at a commercially disadvantageous cost.

In order to preserve the plaintiff's livelihood, the defendants must be held accountable for an amount significant enough to deter such conduct. Absent such a deterrent, the defendants and other potential infringers will be encouraged to violate the law, as infringement would be more cost effective than contracting with the plaintiff. Given the above considerations, the court recommends that the statutory minimum should be doubled, such that the total damages awarded should be $2,000.

### 3. *Injunctive Relief*

The plaintiff also seeks a permanent injunction pursuant to 42 U.S.C. § 605 (e)(3)(b)(i) which allows the court to grant "injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of this section." In order to obtain injunctive relief the plaintiff must establish that absent an injunction it will suffer irreparable harm. *Wright v. Guiliani*, 230 F.3d 543, 547 (2d Cir.2000). "Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Rodriguez v. DeBuono*, 162 F.3d 56,61 (2d Cir.1998). In the instant action, the plaintiff has not demonstrated that statutory damages are not an adequate remedy, and therefore the court declines to recommend that a permanent injunction be issued. *See Main Events/Monitor Productions v. Batista*, No. 96cv5089, 1998 WL 760330, at *1 (E.D.N.Y. Aug. 26, 1998), *Cablevision of Southern Connecticut v. Smith*, 141 F.Supp.2d 277, 288 (D.Conn. Apr. 25, 2001).

*4.     Attorney's Fees*

Section 605(e) mandates that a prevailing plaintiff shall recover reasonable attorney's fees. 42 U.S.C. § 605(e)(3)(B)(iii). The plaintiff submitted an affidavit and time sheets to establish it had incurred $2,750 in attorneys' fees up through October 2005 in prosecuting this action. *See* Attorney's Affidavit of Costs and Fees (hereinafter "Lonstein Aff."). Although the court finds that the rates charged are entirely reasonable,[2] not all of the hours billed are attributable to both defendants. Moreover, the court finds that the defendants should not be held responsible for some of the charges.

First, since the defendant Provta was not brought into the action until the filing of a Second Amended Complaint in July 2005, he should not be held liable for attorneys' fees incurred prior to that point. Olympiakos, on the other hand, was named as a defendant from the outset and is therefore responsible for all reasonably incurred fees from the outset of the litigation. Second, certain attorneys' fees appear to the court to have been incurred because of attorney oversights for which the defendants are not responsible. Specifically, it appears that the filing of the first amended complaint was necessitated by the plaintiff's failure to properly name the plaintiff. In addition, the plaintiff incurred legal fees in connection with the filing of papers concerning a default judgment which became pointless because the plaintiff had incorrectly named a person who was not properly a defendant, and had failed to name the defendant Provta. Accordingly, the attorneys' fees and expenses relating to the preparation and service of the first amended complaint and the first default judgment motion are not compensable.

---

[2]The records reflect that attorneys billed at $200/hour, and paralegals at $75/hour.

Eliminating the attorneys' fees not properly charged to the defendants in accordance with the foregoing discussion, the defendant Olympiakos should be held liable for $1,937.50 in attorneys' fees. Of that total, the defendant Provta should be held jointly and severally liable for $687.50 in attorneys' fees, which represents the fees incurred after he became a defendant.

The defendants should also be held jointly liable for filing fees of $150. Also compensable are the costs incurred in connection with the service of process. As to the latter, Provta is separately liable for $100 for the fees incurred to serve him, while Olympiakos is separately liable for $235 for the fees incurred to serve it.

The plaintiff also seeks $156.25 for investigative expenses incurred while gathering evidence concerning the defendants' unauthorized reception of the plaintiff's cable signals. *See* Lonstein Aff. ¶ 3. These costs were not incurred in the litigation of the action, but rather in the investigation of the facts which occurred well before this action commenced. The term "costs" in the context of litigation typically refers to taxable costs prescribed by local court rules, as limited by section 1920 of title 28, United States Code. *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 440, 107 S.Ct. 2494, 2497 (1987) ("Title 28 U.S.C. § 1920 now embodies Congress' considered choice as to the kinds of expenses that a federal court may tax as costs against the losing party."). Costs of investigation are not within the types of costs permitted by section 1920, and there is nothing to indicate that Congress intended to authorize anything beyond those costs when it enacted section 605(e)(3)(B)(iii), the statute under which the plaintiff's application here proceeds. Accordingly, the court finds that an award for the investigative costs requested here is not appropriate. *See also* Time Warner Cable of New York City v. Sanchez, No. 02 Civ. 5855, 2003 WL 21744089 at *5 (S.D.N.Y. July 8, 2003).

In accordance with the above considerations, the undersigned hereby **RECOMMENDS** that the plaintiff be awarded judgment as follows:

1. statutory damages in the amount of $2,000, for which both defendants are jointly and severally liable;

2. attorneys' fees in the total amount of $1,937.50, for all of which Olympiakos should be held liable, and for $687.50 of which Provta should be held jointly and severally liable with Olympiakos;

3. filing fees in the amount of $150, for which both defendants are jointly and severally liable; and

4. service of process costs of $100 for which Provta is separately liable, and $235 for which Olympiakos is separately liable.

\*          \*          \*          \*          \*          \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Counsel for the plaintiff shall serve a copy of this Report and Recommendation on the defendants by regular mail and file proof of such service in the record.**

                                                                          _____
                                                                          VIKTOR V. POHORELSKY
                                                                          United States Magistrate Judge

Dated: Brooklyn, New York
         January 11, 2007